**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

**BHAVANI RENGAN,**

                    **Plaintiff,**              15-cv-4137

          **- against -**                  <u>**OPINION AND ORDER**</u>

**FX DIRECT DEALER, LLC,**

                    **Defendant.**

───────────────────────────────

**JOHN G. KOELTL, District Judge:**

Bhavani Rengan was employed by the defendant FX Direct Dealer LLC ("FXDD") as an Oracle Technical Analyst from January 2007 through April 2015. Rengan brought this action for interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, after being terminated by the defendant while on leave following the birth of her second child.

Both parties now move for summary judgment on the sole count in the Complaint. For the reasons explained below, neither party is entitled to judgment as a matter of law, and the motions are therefore denied.

**I.**

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

1

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a

reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## II.

The following facts are undisputed unless otherwise noted.

The plaintiff began working for FXDD as an Oracle Technical Analyst in January 2007. FXDD Resp. to Rengan 56.1 Stmt. ¶ 1. Throughout her tenure at FXDD, the plaintiff's job performance was consistently excellent. Id. ¶ 5. The plaintiff received an Employee Handbook once on February 5, 2007, and again on November 23, 2007. FXDD 56.1 Stmt. ¶ 3; Regnan Resp. to FXDD 56.1 Stmt. ¶ 3; Klassen Aff. in Supp. Ex. C. That Handbook contains a section titled "Family and Medical Leave" which provides, as relevant here:

> As required by the Family and Medical Leave Act of 1993, FXDD will grant 12 weeks of unpaid leave per 12-month period to employees who have completed one year of service and who have worked at least 1,250 hours in the last 12 months. . . . Leave may be taken for the following reasons:
> - The birth of a son or daughter . . .

Klassen Aff. in Supp. Ex. B at 23-24. That section also requires employees "[w]henever possible, [to provide] at least 30 days' notice" prior to leave to be taken for the birth of a child, and requires certification of the need for leave. Id. at 24. The Handbook also contains a separate section entitled "Maternity Leave Policy," which provides:

Maternity leave will be treated in the same manner as any other disability leave. Please see the Human Resources Manager for a complete description of Maternity Leave.

At present, all full-time regular employees will receive their full wages for a period not to exceed eight weeks. You may also choose an additional four weeks of unpaid maternity leave.

Id. at 25. The Handbook does not reflect whether the FMLA and maternity leave policies run concurrently or consecutively. Id. at 24-25.

In early 2014, the plaintiff learned she was pregnant with her second child and was due to give birth around the third week of November. FXDD Resp. to Rengan 56.1 Stmt. ¶ 24. In early September, the plaintiff contacted the defendant's sole Human Resources employee, Alexis Kesselman, by email with the subject line "Maternity Leave," informing Kesselman of the plaintiff's due date and stating that "[a]s discussed I would be using my remaining 19 days of vacation followed by maternity leave around [the time of the plaintiff's due date]." Klassen Aff. in Opp. Ex. F; FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 7, 24. In October, the plaintiff followed up by email with Kesselman with the subject line "Maternity Leave." Klassen Aff. in Opp. Ex. F. The plaintiff requested to "take [her] time off/maternity leave" beginning Monday, November 3rd, and stated that she "would like to use [her] vacation days for 2014 (17 days) followed by maternity leave." Id. One of the plaintiff's supervisors, Shawn

4

Dilkes, approved the request. Id. The plaintiff ultimately began her pre-approved leave on Thursday, October 30, two business days earlier than planned. Id.

Alexis Kesselman received no training regarding the defendant's maternity leave and FMLA policies except for what was written in the Employee Handbook. FXDD Resp. to Rengan 56.1 Stmt. ¶ 10. Kesselman testified that her own understanding was that the defendant's maternity leave policy and FMLA leave policy ran concurrently based on her "assumption from previous employers" and based on what the benefits manager at the defendant's former parent company told her. Id.; Klassen Aff. in Opp. Ex. D at 34. However, the Employee Handbook does not state that the two leave policies run concurrently, and neither Kesselman nor anyone else at FXDD ever notified the plaintiff that the policies ran concurrently. Klassen Aff. in Supp. Ex. B at 23-25. Indeed, Annemarie Caiati, the defendant's Vice President of Accounting and Finance and Ms. Kesselman's supervisor, testified that she understood that the two policies ran consecutively and that an employee could request twelve weeks of unpaid FMLA leave to follow the employee's twelve weeks of maternity leave (eight weeks of which could be paid). FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 6, 52, 55-56. Moreover, although Dilkes declared that the defendant "displayed a poster in a conspicuous place on its premises that explained employees'

rights under the [FMLA]," Klassen Aff. in Opp. Ex. B, the plaintiff and three of her coworkers testified that they were not aware of any such poster, and that none of them received any further information or training regarding FMLA leave beyond what was written in the Handbook, FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 18-23.

Following the plaintiff's request for "maternity leave," neither Kesselman nor anyone else at FXDD provided the plaintiff with any FMLA paperwork or notices, nor did anyone notify the plaintiff in writing that the leave would be designated FMLA leave. FXDD Resp. to Rengan 56.1 Stmt. ¶ 27; Klassen Aff. in Opp. Ex. D at 21. Although the defendant maintains that Kesselman informed the plaintiff verbally that her twelve weeks of leave would begin on the day the plaintiff's child was born, and that Dilkes informed the plaintiff verbally that the plaintiff had to return to work "twelve weeks from the day her vacation is over," it is undisputed that the plaintiff never received notification in writing that the leave she planned to take would be designated FMLA leave, and never received a specified return to work date before beginning her leave. FXDD Resp. to Rengan 56.1 Stmt. ¶ 27; Klassen Aff. in Opp. Ex. D at 21-24. And none of the emails sent to the plaintiff prior to her leave indicated that her leave would be designated FMLA leave. FXDD Resp. to Rengan 56.1 Stmt. ¶ 37. Indeed, neither Dilkes nor

Kesselman were aware of any requirement to provide employees with an FMLA Eligibility Notice, FMLA start date, or an expected return to work date. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 13, 23. It is unclear whether the verbal notifications allegedly given to the plaintiff by Kesselman and Dilkes about the start and end dates of her leave included any mention of the FMLA or any indication that the leave to be taken would be designated FMLA leave.

The plaintiff's child was born on November 12, 2014, and the plaintiff advised Kesselman of the child's birth the following day. Id. ¶¶ 39-40. On January 8, 2015, Kesselman emailed the plaintiff, copying Shawn Dilkes, stating that "[t]he last day of your 12 weeks is February 12, 2015 and we are happy to have you back on February 13th!" McKinney Aff. in Supp. Ex. N. This was the defendant's first attempt to communicate a specific return to work date to the plaintiff, and the email still made no mention of the FMLA. FXDD Resp. to Rengan 56.1 Stmt. ¶ 44. It is undisputed that the plaintiff had fully recovered and would have been physically able to return to work by February 13, 2015. Id. ¶ 47. The plaintiff -- who had not been checking her email regularly while on leave -- responded on January 21 indicating that she had just read the email and asked for a convenient time to discuss on the phone. McKinney Aff. in Supp. Ex. N. The day before, on January 20, the plaintiff had sent a

separate email to Kesselman stating: "I would like to use 12 weeks of FMLA unpaid leave to care for my new born. . . . Please treat this email as an application to use Federal FMLA to care for my newborn starting Feb 16th for a period of 12 weeks after. Please let me know if you have any questions." McKinney Aff. in Supp. Ex. L. Kesselman forwarded the plaintiff's email request to Shawn Dilkes and stated "I believe she is confused – I will clarify that her 12 weeks began the day the baby was born. Do you want to be on the email?," to which Dilkes responded, "Ok, sure." McKinney Aff. in Supp. Ex. M.

But no such response was ever sent despite the fact that Ms. Kesselman understood from the plaintiff's January 20th email that the plaintiff believed she was on maternity leave and that she was entitled to take another twelve weeks of unpaid FMLA leave. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 58-59. Kesselman did not understand at the time that she had a responsibility to advise the plaintiff in writing whether the plaintiff's FMLA request was approved or denied. Id. ¶ 73. The plaintiff testified that if she had been promptly informed that she was not entitled to twenty-four weeks of leave and was thus required to return to work on February 13, she would have returned to work on that day. Id. ¶ 61. Several weeks after the January 20 email, having not heard anything in response, the plaintiff sent a follow-up email on February 9 asking for "[a]ny updates" on

her request for FMLA leave. McKinney Aff. in Supp. Ex. O. Kesselman did not respond to the email. On February 11, the plaintiff sent yet another email to Ms. Kesselman stating that the plaintiff was "really concerned" that she had not received a response to her request for FMLA leave. McKinney Aff. in Supp. Ex. P. The plaintiff also testified that she called Kesselman multiple times and left multiple voicemails, but never heard back. FXDD Resp. to Rengan 56.1 Stmt. ¶ 70.

More than two months after the plaintiff's written request for FMLA leave, on March 31, Ms. Kesselman emailed the plaintiff stating that "I have been trying to be in touch with you at the below phone number. Can you please confirm it is correct?" McKinney Aff. in Supp. Ex. R. The parties dispute whether Kesselman actually made any such calls. The plaintiff maintains that the number listed was her correct cell phone number, and the plaintiff's friend and co-worker testified that she had successfully reached the plaintiff at that number many times during the course of the plaintiff's employment. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 77, 79.

In any event, on April 1 the plaintiff responded to Ms. Kesselman's email, and they spoke by phone that same day. Id. ¶¶ 80-81. On that call, Kesselman requested that the plaintiff return to work as early as that week, and the parties agree that the plaintiff was "shocked" by that request because she had been

under the impression that she would be on leave until May 11,
2015, and needed to secure childcare for her newborn. FXDD Resp.
to Rengan 56.1 Stmt. ¶ 81. The parties dispute whether the
plaintiff was told on that call that she was not on FMLA leave,
but they agree that, at a minimum, the plaintiff was told that
"it is not FMLA, or something like that." FXDD 56.1 Stmt. ¶ 25;
Rengan Resp. to FXDD 56.1 Stmt. ¶ 25. The plaintiff was not
given a specific return to work date on the April 1 call, but
FXDD maintains that the plaintiff understood that she was to
return to work "immediately." FXDD 56.1 Stmt. ¶ 24; FXDD Resp.
to Rengan 56.1 Stmt. ¶ 81. The parties also agree that on the
April 1 call, the plaintiff indicated to Ms. Kesselman that it
would be difficult to obtain childcare on such short notice, and
that following the call, the plaintiff began urgently looking
for childcare so that she could return to work as soon as
possible. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 83-84. It is
unclear what the parties' understandings were at the end of the
call regarding the timeline of the plaintiff's return to work.

A few days later, the plaintiff attempted to check her work
email but was locked out -- which had occurred periodically
throughout the plaintiff's leave -- and had to call the system
administrator to have the account unlocked. FXDD Resp. to Rengan
56.1 Stmt. ¶ 85. On April 9, over a week after the April 1 phone
call and without any other communication between the plaintiff

and FXDD in the interim, Kesselman sent the plaintiff an email stating that the defendant had been "expecting [the plaintiff] to return to work on February 12, 2015." FXDD Resp. to Rengan 56.1 Stmt. ¶ 86; McKinney Aff. in Supp. Ex. S. The email stated that "[t]he total period of maternity leave to which you were entitled was 12 weeks and this period came to an end o[n] February 11, 2015." McKinney Aff. in Supp. Ex. S. The email acknowledged that "the information [the plaintiff] received regarding FMLA led [her] to believe that [she] [was] eligible to take additional time continuing the 12 weeks from November 12, 2014; however, that information was incorrect." Id. The email continued: "Following our conversation on Wednesday, April 1, 2015, we have not received communication from you regarding your return to work. If you have decided that you do not wish to return to work, we ask that you confirm your resignation in writing. If you wish to remain with the company, we expect you to return to the office on Monday, April 13, 2015. Please advise as soon as possible." Id. The email was sent at 5:03 p.m. on Thursday, April 9, leaving the plaintiff one business day in which to make preparations to return to the office on Monday the 13th.

The parties dispute whether the plaintiff ever received or viewed that email, but it is undisputed that the plaintiff did not respond to it. FXDD Resp. to Rengan 56.1 Stmt. ¶ 88. After

the plaintiff failed to show up at work on Monday, April 13, and
without contacting the plaintiff by phone or sending any follow-
up emails, Kesselman drafted a letter on April 15 terminating
the plaintiff's employment. Id. ¶¶ 92-93. That letter was sent
to the plaintiff via overnight mail on April 16, and she
received it on April 17. Id. ¶¶ 95-96. In the meantime, the
plaintiff attempted to log in to the FXDD email system on April
16 to notify the defendant that she was prepared to return to
work, but was again locked out of the system, this time because
-- unbeknownst to her -- her employment had been terminated.
Id. ¶¶ 99-100. The plaintiff called Shawn Dilkes that day to
inform him that she had secured childcare and was prepared to
return to work, at which point he asked if she had received the
"letter" and directed her to human resources. Id. ¶¶ 100-102.

The next day, April 17, the plaintiff received the letter
terminating her employment. Id. ¶¶ 103-04. The letter stated
that FXDD had "made numerous attempts to be in touch with you
regarding your return to work after giving birth on November 12,
2014." Id. ¶ 104. The letter went on to state that the plaintiff
was entitled to only "12 weeks of unpaid leave under FMLA for
maternity leave," and that although the plaintiff had been
expected to return on February 12, the defendant -- in an effort
to be "flexible and understanding" -- had "extended [the
plaintiff's] return to work date until April 13, 2015 which was

12

communicated to [the plaintiff] via phone call on April 1, 2015 and via email on Thursday, April 9, 2015." Id. It is undisputed that the plaintiff was <u>not</u> in fact informed of the April 13 return to work date on the April 1 phone call, and that the first time that date was ever mentioned was in an email sent to the plaintiff after 5 p.m. on Thursday, April 9. Id. ¶¶ 81, 86. The letter went on to conclude: "Since you have not returned to work and have failed to communicate to your manager or Human Resources after instructions to that fact were given, your employment has been terminated as job abandonment and insubordination effective April 15, 201[5]." Id. ¶ 104; McKinney Aff. in Supp. Ex. T.

That same day, the plaintiff emailed Dilkes and Kesselman protesting her termination and stating that "I was trying to get into my email yesterday to inform you that I have child care from today and can get to work from next Thursday April 23rd." FXDD Resp. to Rengan 56.1 ¶ Stmt. 106. Neither Dilkes nor Kesselman ever responded to the plaintiff's email. The plaintiff testified that she had begun training her nanny during the second week of April, and would have returned to work immediately if she had known she would be terminated for failing to do so. Id. ¶ 107. The defendant disputes the allegation that the plaintiff would have been able to return to work "immediately" in light of the plaintiff's suggestion, after

receiving the termination letter on April 17, that she could return to work beginning on April 23. Id. However, the plaintiff's testimony is uncontested that, had FXDD made a timely response to her January 20 email informing her that she was not entitled to further leave, the plaintiff would have been physically able to return work on February 13. Id. ¶ 112.

### III.

### A.

Both parties now move for summary judgment on the Complaint's sole claim of FMLA interference. The plaintiff argues that she is entitled to judgment as a matter of law because the defendant's failure to provide adequate and timely FMLA notices prevented the plaintiff from structuring her leave so as to ensure that her job was preserved and ultimately resulted in the plaintiff's termination. The defendant moves for summary judgment arguing that the plaintiff received the notices to which she was entitled and that she received the FMLA leave that was required.

The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA entitles employees who take qualified FMLA leave to be reinstated to the same or an equivalent position upon their return from leave. 29 U.S.C. § 2614(a)(1).

To establish a prima facie case of FMLA interference, a plaintiff must establish "1) that she is an eligible employee under the FMLA; 2) that defendant is an employer as defined in [the] FMLA; 3) that she was entitled to leave under [the] FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under [the] FMLA." Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

It is undisputed that the first three requirements are met here. And although the defendant purports to dispute that the plaintiff gave notice to the defendant of her intention to take leave, the relevant facts are undisputed: the plaintiff gave notice of her intention to take leave that was FMLA-qualifying in early September 2014, well over thirty days in advance of her planned leave, and on January 20, 2015 made a specific written request for FMLA leave twenty-seven days before the plaintiff planned to begin that leave. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 24, 48. The defendant's theory of the case is that the plaintiff was on FMLA leave for the twelve weeks following the birth of her child and was not entitled to further leave. Thus, the only relevant notice is that which the plaintiff provided in advance of taking leave for the birth of her child. That notice was plainly adequate as a matter of law.

The crucial issue is thus whether the plaintiff can establish as a matter of law that the defendant denied her benefits to which she was entitled under the FMLA. Both the Supreme Court and the Second Circuit Court of Appeals have indicated that a distinct claim of FMLA interference may exist for failure to give the notices required by the FMLA regulations where that failure results in prejudice to the employee. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002); Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 723-24 (2d Cir. 2001). When, for example, an employer fails to conform to the technical notice requirements of the FMLA prior to the employee's leave but it is undisputed that the employee could not have returned to work after twelve or more weeks of leave, the employee does not have a claim of interference because no prejudice resulted from the lack of notice. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2d Cir. 1999) (employee had no claim of FMLA interference because his right to reinstatement following leave "could not have been impeded or affected by the lack of notice because his leave was caused by a serious health condition that made him unable to perform the functions of his position, and it is undisputed that that inability continued for some two months after the end of his 12-week FMLA leave period" (alterations, citation, and quotation marks omitted)). When, on the other hand, an employee

is terminated for failing to return after twelve weeks of FMLA leave after not having received adequate notice of the employee's FMLA rights and responsibilities, and the employee can establish that with proper notice he would have structured his leave "in such a way as to preserve the job protection afforded by the Act," the employee has a viable claim of interference under the FMLA. See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004).

It is undisputed that the defendant failed to provide the plaintiff with the required FMLA notices. When an employee either requests FMLA leave or an employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason," the employer is required, within five business days, to "notify the employee of the employee's eligibility to take FMLA leave" and must "state whether the employee is eligible for FMLA leave." 29 C.F.R. § 825.300(b)(1), (2). It is undisputed that FXDD failed to provide such notice. See FXDD Resp. to Rengan 56.1 Stmt. ¶ 27. The defendant alleges that Ms. Kesselman orally notified the plaintiff sometime before the plaintiff's leave that her leave would begin "with the birth of her child," but there is no indication that any such notice was given within five days as required by the regulations, and there is no indication that Ms. Kesselman or anyone else at FXDD explicitly referred to the plaintiff's maternity leave as FMLA leave at any

17

time prior to the plaintiff's leave. See id. The defendant's

reliance on the existence of a conspicuously displayed FMLA

poster -- which is, in any event, disputed -- is misplaced,

because any such poster could only fulfill the "general notice"

requirement included in 29 C.F.R. § 825.300(a), and has no

bearing on the individualized notice requirements. Similarly,

the notices provided in the Employee Handbook could not have

satisfied these individual notice requirements, and in any

event, the Handbook failed to specify that the defendant's

maternity leave and FMLA leave policies ran concurrently. See

Klassen Aff. in Supp. of FXDD Mot. Ex. B at 23-25.

At the same time as the eligibility notice is provided, an

employer is also required to issue a "[r]ights and

responsibilities notice" that details "the specific expectations

and obligations of the employee and explain[s] any consequence

of a failure to meet these obligations." 29 C.F.R.

§ 825.300(c)(1). The notice is required to include, among other

things, notice "[t]hat the leave may be designated and counted

against the employee's annual FMLA leave entitlement." Id.

§ 825.300(c)(1)(i). It is undisputed that the plaintiff did not

receive such notice. The defendant's allegation that Shawn

Dilkes orally informed the plaintiff that "she's gotta come back

in twelve weeks" plainly does not meet the requirements of

§ 825.300(c) because it is undisputed that Dilkes did not

mention the FMLA or even provide the plaintiff with a specific return to work date, did not inform the plaintiff that she would be subject to termination if she failed to return after twelve weeks, and that any such notice was not in writing. <u>See</u> FXDD Resp. to Rengan 56.1 Stmt. ¶ 27.

The regulations also require an employer to "notify the employee whether the [employee's] leave will be designated and will be counted as FMLA leave within five business days" of when the employer has "enough information to determine whether the leave is being taken for a[n] FMLA-qualifying reason." 29 C.F.R. § 825.300(d)(1). The designation notice "must be in writing" and "must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement," including, if known, "the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement." 29 C.F.R. §§ 825.300(d)(4), (d)(6). An employer may retroactively designate leave as FMLA leave "with appropriate notice to the employee" provided that "the employer's failure to timely designate leave does not cause harm or injury to the employee." 29 C.F.R. § 825.301(d). It is undisputed that the plaintiff did not receive any such written notification prior to beginning her leave despite the fact that the defendant knew months in advance that the plaintiff's leave was FMLA-qualifying. Even the email sent to the plaintiff on January 8, 2015 did not mention the

FMLA, or specify that the plaintiff's leave had been designated FMLA leave, or inform the plaintiff of the amount of FMLA leave to which she was entitled. See McKinney Aff. in Supp. Ex. N.

The regulations also require an employer to "responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R. § 825.300(c)(5). Having received the plaintiff's email on January 20 requesting FMLA leave to begin on February 16, it is undisputed that the defendant failed to reply to the plaintiff's request in writing and failed to communicate with the plaintiff in writing at all for more than two months despite the plaintiff's obvious confusion and repeated follow-up emails. See generally FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 48, 58-74. Whether Ms. Kesselman ever attempted to communicate with the plaintiff by phone during that time period is disputed. See id. ¶¶ 75-80.

The regulations specify that "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with . . . an employee's FMLA rights." 29 C.F.R. § 825.300(e). The plaintiff argues that she is entitled to summary judgment because the undisputed facts establish that the defendant's failure to (1) timely designate her leave as FMLA leave; (2) timely inform the plaintiff of her obligations under the FMLA, including a return to work date; and to (3) timely respond to the plaintiff's written request for FMLA leave

prevented the plaintiff from structuring her leave so as to
ensure her own job security and ultimately resulted in her
termination. The issue is whether the defendant's numerous
notice failures prejudiced the plaintiff and ultimately caused
her to lose her job. Issues of fact exist as to whether the
plaintiff was prepared to return to work as directed when her
employer informed her that any FMLA leave had been exhausted.

Most significantly, the facts surrounding the
communications between the plaintiff and FXDD between January
and April 2015 are in dispute. Taken in the light most favorable
to FXDD, a jury could find that the plaintiff ignored numerous
calls from Ms. Kesselman between January and March 2015; that
the plaintiff was eventually informed that she did not qualify
for further leave on the April 1 phone call; and that she knew
was expected to return to work that week. See FXDD Resp. to
Rengan 56.1 Stmt. ¶¶ 75-80, 81. The plaintiff concedes that her
employer said something about FMLA leave on that call and that
she was told she needed to return to work that week, and did not
do so. See Klassen Aff. in Opp. Ex. C at 20. A jury could also
believe that the plaintiff either received the April 9 email
from Ms. Kesselman directing the plaintiff to return to work on
April 13 but ignored it, or did not check her email despite her
understanding that she was expected to return to work as soon as
possible. See id. ¶¶ 85-88. Thus, there are issues of fact as to

whether the defendant's failures to meet the FMLA notice requirements prejudiced the plaintiff because a jury could find that the plaintiff was given a reasonable opportunity to return to work after being notified that she was not entitled to further leave, and failed to do so.

The dispute over what transpired between late January and mid-April 2015 is what separates this case from Young v. Wackenhut Corp., No. 10-cv-2608 (DMC), 2013 WL 435971 (D. N.J. Feb. 1, 2013). In that case, as here, the plaintiff informed her employer of her intention to take maternity leave, but never received an eligibility notice, a rights and responsibilities notice, or a designation notice. Id. at *4. Nor did her employer inform the plaintiff prior to her leave of a return to work date. Id. The plaintiff there, as here, reached out to her employer on several occasions during her leave and received no response. Id. at *5. The plaintiff eventually received a phone call on November 30, 2009, informing her for the first time that her FMLA leave had already expired and that she was expected to return to work, but failing to provide the plaintiff with a return to work day. Id. The defendant in Young then terminated the plaintiff one day later. Id. The court granted summary judgment to the plaintiff because the plaintiff "was terminated the day after she was first told by [the defendant] that her leave time was exhausted" and was therefore "not afforded the

opportunity to make informed decisions about her leave, based on the lack of FMLA notice provided to her" by the defendant. Id. at *6. In this case, the plaintiff was informed on April 1 that she was not entitled to further leave and was ultimately terminated over two weeks later, by letter dated April 16. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 81-82, 95.

Whether the plaintiff was in fact prepared to return to work as directed and whether the plaintiff received reasonable notice of the denial of the right to any further leave are issues of fact that cannot be decided on these motions. Because a reasonable jury could find that the plaintiff was not prejudiced by FXDD's multiple FMLA notice failures because it gave the plaintiff a reasonable opportunity to return to her position, summary judgment is inappropriate and the plaintiff's motion is **denied**.

### B.

The defendant's motion is also denied. The defendant argues that it is entitled to judgment as a matter of law because the plaintiff was not denied any benefits to which she was entitled under the FMLA because she received notice of her rights under the FMLA and received more than twelve weeks of unpaid leave. "When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996

F.2d 1455, 1461 (2d Cir. 1993). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. (quotation marks omitted).

The fact that the plaintiff received more than twelve weeks of unpaid leave before being fired does not entitle FXDD to summary judgment. The defendant's reliance on Fulham v. HSBC Bank USA is misplaced. In that case, decided in 2001, this Court determined that a regulation requiring an employer to designate FMLA leave in advance or else provide an employee with another twelve weeks of leave following designation was contrary to the terms of the FMLA and was therefore invalid. No. 99-cv-11054 (JGK), 2001 WL 1029051, at *5-7 (S.D.N.Y. Sept. 6, 2001). The plaintiff does not rely on that now-defunct regulation, and does not otherwise argue that FXDD was required to give her another twelve weeks of leave after informing her that her maternity leave also constituted FMLA leave. Rather, the plaintiff argues that the defendant's failure to inform her in a timely fashion that the leave she planned to take would constitute FMLA leave and the failure to respond in a timely way to her written request for FMLA leave in January 2015 prevented her from structuring her leave in a way so as to ensure she could return to her job. She argues that, had she been timely informed

following her January 2015 request for FMLA leave that she was
not entitled to further leave and needed to return to work on
February 13, she in fact would have returned on the 13th. Fulham
does not preclude that theory of liability. In fact, the case
acknowledges that "[i]n some situations an employer's failure to
provide notice to an employee that the employee's leave would be
designated FMLA leave may interfere with an employee's
substantive FMLA rights." Id. at *7. This Court concluded that
Fulham was not such a case "[b]ecause it is undisputed that the
plaintiff was not able to return to work at any point during the
26 week period of time he was on short-term disability," and
therefore "any failure by the defendant to [designate the leave
as FMLA leave] cannot be found to have impeded his return to
work." Id.; see also Sarno, 183 F.3d at 161-62. Ms. Rengan's
case is precisely the kind of case, anticipated by Fulham and
Sarno, in which an employee can establish an FMLA interference
claim based on an employer's failure to provide adequate FMLA
notices, including notice of designation.

The defendant also argues that it is undisputed that FXDD
notified the plaintiff of her FMLA rights at least three times:
first, through the general notifications listed in the Employee
Handbook; second, by the email sent to the plaintiff on January
8, 2015; and third, on the April 1 phone call. None of those
communications entitle the defendant to summary judgment. As

discussed above, the critical issue in this case is whether the notices provided by the defendant to the plaintiff were sufficient to ensure that she could make meaningful use of her FMLA rights, including the right to return to her job following leave. The information provided by the defendant in the Employee Handbook did not inform the plaintiff that the leave she planned to take would be designated FMLA leave and did not specify that the defendant's FMLA and maternity leave policies ran concurrently. <u>See</u> Klassen Aff. in Supp. Ex. B at 23-25. The January 8 email also failed to mention the FMLA or inform the plaintiff that the leave she was on constituted FMLA leave. McKinney Aff. in Supp. Ex. N. And although it is undisputed that Ms. Kesselman eventually mentioned the FMLA on the April 1, 2015 phone call, the content of what was relayed to the plaintiff on that call is disputed. FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 81-85.

There are genuine issues of material fact about the nature and circumstances of the notices provided to the plaintiff and whether those notices allowed the plaintiff to make an informed decision to structure her leave in a manner that would ensure her successful return to work. This is a case in which clear notice was particularly important in light of the fact that the defendant's own Employee Handbook did not specify whether its maternity leave and FMLA policies ran concurrently or consecutively. FXDD Resp. to Rengan 56.1 Stmt. ¶ 54; Klassen

Aff. in Supp. Ex. B. Indeed, the plaintiff's belief that the policies would run consecutively was apparently shared by at least one of the defendant's other employees. FXDD Resp. to Rengan 56.1 Stmt. ¶ 54. A jury could find that the first time anyone at FXDD informed the plaintiff that she was not entitled to further FMLA leave and needed to return to work was on the April 1 phone call. See FXDD Resp. to Rengan 56.1 Stmt. ¶¶ 81-85. The plaintiff was not provided with a specific return to work date until over a week later, by email sent after business hours on Thursday, April 9. See id. ¶¶ 82-86. Even assuming the plaintiff read the email as soon as it was sent, the email left the plaintiff with a single business day to make arrangements to return to work the following Monday. See id. ¶ 86. A jury could conclude that this method of notice -- which indisputably did not conform to the FMLA requirements -- deprived the plaintiff of a reasonable opportunity to return to work and resulted in the plaintiff's termination, thereby constituting interference with her FMLA rights. The defendant's motion is therefore **denied.**

**CONCLUSION**

For the reasons described above, the motions for summary judgment, ECF Nos. 77 and 85, are **denied**. The clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
             August 4, 2017       ___/s/_____
                                       John G. Koeltl
                         United States District Judge